UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **CHARETY RINCON,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>    **Defendant.** | Civ. No. 2:14-cv-08052 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

   Plaintiff Charety Rincon challenges a final determination by the Commissioner of Social Security (the "Commissioner") partially denying her Title II and Title XVI applications for disability insurance benefits and supplemental security income. For the reasons that follow, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion.

   **I. LEGAL STANDARDS**

   **A. The Five–Step Sequential Analysis**

   Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work ("PRW"). *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the

1

burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404 .1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir.2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir.2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II. BACKGROUND

Plaintiff Charety Rincon is a thirty-four year-old resident of Union City, New Jersey, who seeks a finding of disability due to chronic asthma, herniated discs, gastritis, kidney problems, sinus problems, pinched nerves, migraines and human papillomavirus. Tr. 105. She holds an associate's degree in computer science but has never worked in the field. Tr. 84. She formerly worked as a manager at a shoe store and a teacher's assistant at a daycare. Tr. 81, 83.

On October 18, 2011, Plaintiff filed for a period of disability and disability insurance benefits under Title II, and for supplemental security income ("SSI") under Title XVI. Tr. 25. In both applications, Plaintiff alleged disability since November 1, 2009. Tr. 57.

The ALJ issued a partially favorable decision, granting benefits for a fourteen-month period between October 28, 2011 and December 28, 2012 (hereinafter, the "Closed Period") because during that time, Plaintiff's asthma attacks occurred frequently enough to satisfy Listing 3.03B contained in 20 CFR Part 404, Subpart B. However, for the other time period, the ALJ found that, subject to certain non-exertional restrictions, Plaintiff's residual functional capacity ("RFC") enabled her to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).

The Appeals Council denied Plaintiff's request for review. This appeal followed.

### A. Summary of the Record

#### *a. Asthma*

On December 17, 2009, one month after the alleged onset date, Plaintiff presented to her doctor, Bienvenido Sanchez, complaining of chest tightness. Dr. Sanchez diagnosed her with asthma but concluded that her lungs were clear. He then prescribed her Albuterol, Advair, and Predisone. Tr. 645. On February 12, 2010, Plaintiff returned with similar complaints, and Dr. Sanchez again concluded that her lungs were clear. *Id*. In July 2010, doctors at Hoboken University Hospital ("HUH") treated Plaintiff for asthma and an upper respiratory infection, but were skeptical as to whether she was taking her medication. Tr. 425. Her chest x-rays on that date were unremarkable. Tr. 426-427.

During the Closed Period, Plaintiff had seven asthma attacks that required physician intervention, and there was no indication that she was not taking her medication as instructed. On October 28, 2011, Dr. Wilcox diagnosed Plaintiff with asthma and an upper respiratory problems. Tr. 460. Then, on December 1, 2011, Plaintiff presented to HUH again with complaints of chest tightness, coughing, and shortness of breath, and was prescribed medication. Tr. 1142. On February 21, 2012, doctors at the Center for Family Health clinic (the "CFH clinic") diagnosed Plaintiff with sinusitis, post-nasal drip, and asthma exacerbation. Tr. 954. Approximately one week later, Dr. Alexander Hoffman examined Plaintiff on behalf of the Social Security Administration. He concluded that Plaintiff ambulated well and walked with a normal gait. Tr. 507-09. Finally, he found that Plaintiff's pulmonary function test showed results that were better than normal. *Id*.

On both March 2, 2012 and March 9, 2012, the HUH doctors diagnosed Plaintiff with asthma and an upper respiratory infection. Tr. 531-533. Plaintiff returned to HUH on May 14, 2012, where physicians concluded that she suffered from an asthma exacerbation. Tr. 545, 551. On May 22, 2012, Plaintiff returned to HUH again with a cough, wheezing, and chest tightness. Tr. 572. Plaintiff also complained of wheezing and shortness of breath at the CFH clinic on October 11, 2012 and November 21, 2012. Her next and final severe attack occurred on December 4, 2012, when Plaintiff went to the HUH emergency room for asthma exacerbation. Tr. 966. HUH doctors diagnosed her with asthmatic bronchitis and prescribed Zithromax, Prednisone and Albuterol. Tr. 1027.

After a December 26, 2012 hospital visit, doctors reported wheezing but no respiratory distress. Tr. 1020. Plaintiff left before doctors administered treatment. *Id.* After the Closed Period, *i.e.*, after December 28, 2012, Plaintiff did not return to HUH again until she suffered from asthma attacks on April 5, 2013 and April 18, 2013. Tr. 1201, 1187. Plaintiff also complained of asthma symptoms at a check up performed by her primary care provider on March 6, 2013. Tr. 949. However, doctors found no wheezing, and a clear throat. *Id.*

There are no medical opinions preceding or following the Closed Period. Dr. Nancy Simpkins, a State agency evaluator, provided opinion evidence, but did not have the opportunity to interview or examine Plaintiff. Tr. 35, 95. Dr. Simpkins opined that Plaintiff could perform light work, but could only walk for four hours in an eight-hour day. She further opined that Plaintiff should avoid concentrated extreme cold, extreme heat, wetness, humidity, and pulmonary irritants. Tr. 100.

### b. *Gastritis and Gastrointestinal Impairments*

During and after the Closed Period, Plaintiff occasionally reported abdominal pains, but did not receive any diagnoses of gastrointestinal disorders. Tr. 626, 946, 952. For example, on January 11, 2011, Plaintiff went to the HUH emergency room with complaints of abdominal pain. Tr. 442. Doctors recognized abdominal tenderness, but concluded that there were no clinically significant abnormalities. Tr. 446. On September 27, 2011, Plaintiff underwent a CT scan that revealed probable lipoma, a benign tumor of fatty tissue. Tr. 438-39. That day, she also went to the emergency room for abdominal pain and vomiting, but was sent home after a pregnancy test showed negative results. When Plaintiff returned to the emergency room with similar complaints the next day, doctors diagnosed her with gastroenteritis, or a stomach virus. Tr. 475, 479.

### c. *Migraines and Temporo-Mandibular Joint Disorder ("TMJ")*[1]

Most medical records documenting complaints of migraines come from the Closed Period, for which the ALJ awarded benefits. On April 5, 2011, Plaintiff complained of headaches on a follow-up visit at the CFH clinic. Tr. 506. Six months later, on October 13, 2014, Plaintiff complained of intermittent headaches at HUH. Tr. 501. Doctors diagnosed her with chronic sinusitis. *Id.* Plaintiff's x-rays revealed no abnormalities. Tr. 529, 1161.

The record shows conflicting diagnoses regarding TMJ. In June 2008, Dr. Phillip Geron concluded that Plaintiff does not have TMJ, nor any sustained facial or jaw injury. Tr. 859. Plaintiff cites an almost illegible report from January 5, 2009, by a Dr. Robert J. Federman concluding that Plaintiff does have TMJ. Tr. 733. The record shows no ongoing treatment for TMJ, nor does it show any relevant medical records since the alleged onset date. After his February 27, 2012 evaluation of Plaintiff, Dr. Hoffman noted only a "slight restriction" in opening and closing her mouth. Tr. 508.

---

[1] Plaintiff also includes "facial pain" in her list of impairments that the ALJ discounted without explaining. However, the record shows no complaints of "facial pain" independent of TMJ.

4

### B. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. Tr. 29. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar discopathy with radiculitis, asthma, chronic sinusitis and obesity. *Id.* However, the ALJ found Plaintiff's gastrointestinal impairments, TMJ, and migraines not to be severe. *Id.* At step three, the ALJ found that during the Closed Period, Plaintiff's asthma became severe enough to meet Listing 3.03. In doing so the ALJ reasoned that Plaintiff suffered from the requisite seven asthma attacks in the span of fourteen-months, triggering *per se* disability. Tr. 34.

However, the ALJ determined that prior to the Closed Period, Plaintiff had no impairment that met those specified in the Listings. With respect to her lumbar discopathy, Plaintiff did not suffer from the requisite nerve root compression, spinal arachonoiditis, or pseudoclaudication. Tr. 30. The ALJ also gave great weight to Dr. Hoffman's conclusion that Plaintiff's respiratory tests revealed better-than-normal results. *Id.* The ALJ noted that he also considered Plaintiff's obesity in combination, but that Dr. Hoffman reported effective ambulation. *Id.* Finally, the ALJ noted that after the Closed Period, Plaintiff's asthma attacks had largely subsided. Tr. 36.

At step four, the ALJ decided that, with the exception of the Closed Period, Plaintiff retained the RFC to perform light work. Tr. 30, 37. Specifically, Plaintiff could stand and/or walk for four hours and sit for six hours in an 8-hour workday. She could never climb ladders, ropes or scaffolds, but could occasionally climb ramps or stairs, and she could stoop, crouch, kneel, and crawl. Due to Plaintiff's asthma, the ALJ added the restriction that Plaintiff must avoid bronchial irritants like noxious fumes, odors, dust, gases and chemicals. In making those determinations, the ALJ relied in part on the opinions of Dr. Hoffman and Dr. Simpkins. *Id.* The ALJ also relied on Plaintiff's own testimony, which revealed that Plaintiff engaged in various activities of daily living, including cooking, cleaning and laundry. Tr. 37-38. Crediting the vocational expert, the ALJ decided that Plaintiff's RFC precludes her from performing past relevant work. Tr. 38.

At step five, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national and regional economy, including charge count clerk, order clerk, and food checker. Tr. 38-39. Thus, the ALJ concluded that Plaintiff was not disabled outside the Closed Period.

**III. DISCUSSION**

Plaintiff chiefly argues that the ALJ failed to explain his finding that Plaintiff's TMJ, gastrointestinal impairments, and migraines were not severe. Plaintiff also argues that the ALJ's analysis at step four is not supported by substantial evidence.

   A. *The ALJ Failed to Adequately Explain His Finding that Plaintiff's Gastrointestinal Impairments Were Not "Severe"*

Plaintiff correctly argues that the ALJ failed to adequately explain why Plaintiff's gastrointestinal issues were not severe. At step two, the ALJ must determine whether a claimant's alleged impairment is "severe." *Id.* §§ 404.1520(c), 416.920(c). Only "severe" impairments will be further evaluated in the ALJ's sequential analysis.[2] *See, e.g., Sassone v. Commissioner of Social Sec.*, 165 Fed.Appx. 954, 960 (3d Cir.2006). If an ALJ finds an alleged impairment not to be severe at step two, he or she must explain why. *Carter v. Astrue*, No. 12-2788, 2013 WL 1845670, *9 (D.N.J. Apr. 30, 2013). Even though Plaintiff in this case alleged disability on account of her gastrointestinal issues, the ALJ did not discuss any evidence that either supported or discounted Plaintiff's allegations. Indeed, the ALJ did not mention a single piece of evidence on the record that concerned Plaintiff's gastrointestinal condition, including the following:

- Plaintiff's report of abdominal pains
- Emergency room visits for nausea, vomiting, and diarrhea
- Medical reports finding abdominal tenderness
- A diagnosis of gastroenteritis

This is not to say that the ALJ reached the wrong outcome in finding Plaintiff's gastrointestinal impairments not to be severe. However, the ALJ's failure to weigh the evidence concerning Plaintiff's gastrointestinal condition puts this case "beyond meaningful judicial review." *See Burnett v. Commissioner*, 220 F.3d 112, 119-20 (3d Cir.2000) (district court cannot review an ALJ ruling that is devoid of any reasoning or discussion of the evidence). Therefore, the ALJ's decision will be vacated and remanded. On remand, the ALJ must provide a sufficient explanation for his step two conclusion regarding Plaintiff's gastrointestinal impairments.

   B. *Plaintiff's Other Arguments are Without Merit*

---

[2] Plaintiff appears to argue that the ALJ did not adequately address her gastrointestinal impairments at step four. However, the ALJ did not find those impairments to be "severe" at step two, meaning they never were subject to a step four analysis.

While the Court agrees that the ALJ's analysis of Plaintiff's gastrointestinal impairments was insufficient, it finds Plaintiff's other arguments to be unavailing. First, contrary to Plaintiff's position, the ALJ adequately explained his reasons for discounting the severity of Plaintiff's migraines at step two. Relying on clinical records, the ALJ noted that Plaintiff consistently denied vomiting, photophobia, neck stiffness, nausea, and weakness during treatment. The ALJ also noted that Plaintiff's x-rays were unremarkable. Additionally, Plaintiff testified that her headaches tend to occur with menstruation or exceptional circumstances. Finally, the ALJ noted that Plaintiff's headaches did not stop her from working demanding jobs in the past, nor have they stopped her from performing busy daily activities.

Similarly, the ALJ also adequately explained his reasoning for discounting the severity of Plaintiff's jaw impairments at step two. Notably, the ALJ explained that Dr. Hoffman's evaluation concluded that Plaintiff suffered from only a "slight restriction" when opening and closing her jaw. Those restrictions, the ALJ noted, presented minor problems in opening wide and chewing, but did not prevent Plaintiff from work-related functions.

The Court also rejects Plaintiff's argument that the ALJ erred in concluding that her asthma did not render her disabled outside of the Closed Period. Plaintiff argues that she is entitled to disability during that time because she had the same complaints of "wheezing and chest tightness" that were found in the Closed Period. This argument, however, misunderstands the analysis at step three. The "Listing of Impairments," 20 CFR Part 404, documents impairments that direct a decision of disability *per se*. An impairment that meets only some of the criteria for a listed impairment "no matter how severe[], does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). To trigger a finding of disability *per se* under Listing 3.03 (B), Plaintiff must suffer from a certain number of asthma attacks (at least six per year). The ALJ recognized that Plaintiff met this threshold for the Closed Period, in which she had seven attacks. The ALJ also recognized that Plaintiff's attacks subsided after December 2012. Thus, after December 2012, Plaintiff no longer met the requirements of Listing 3.03. Moreover, at step four the ALJ thoroughly explained his reasons for not fully crediting Plaintiff's complaints regarding her asthma. *Burnett*, 220 F.3d at 119 (ALJ must "consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination"). Specifically, the ALJ noted that outside of the Closed Period, physical examinations revealed clear lungs, normal breath sounds, and unremarkable x-ray results. He further noted that Plaintiff was capable of various daily activities, like helping her mother, preparing meals, doing laundry, and using public transportation. The Court therefore concludes that this portion of the ALJ's decision is supported by substantial evidence.

7

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  September 14, 2015**